IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| ZACHARY TYLER SMITH, § | |
| PETITIONER, § | |
| § | |
| v. § | CIVIL ACTION NO. 4:07-CV-221-A |
| § | |
| NATHANIEL QUARTERMAN, DIRECTOR, § | |
| TEXAS DEPARTMENT OF CRIMINAL § | |
| JUSTICE, INSTITUTIONAL DIVISION, § | |
| RESPONDENT. § | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND NOTICE AND ORDER

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS

A.  NATURE OF THE CASE

This is a petition for writ of habeas corpus by a state prisoner pursuant to 28 U.S.C. § 2254.

B.  PARTIES

Petitioner Zachary Tyler Smith, TDCJ-ID #1109116, is confined by the Texas Department of Criminal Justice, Institutional Division, in the Hughes Unit, Gatesville, Texas.

Respondent Quarterman is the Director of the Texas Department of Criminal Justice, Institutional Division.

C.  CASE HISTORY

On August 24, 2001, the bodies of Jerry Thomas and Kelly Thomas were found at their home near Stephenville, Texas. Smith was indicted December 12, 2001 in cause number CR11300 in the 266th Judicial District Court of Erath County, Texas for the capital murder of Kelly Thomas. (Clerk's R. at 1). On July 16, 2002, a jury found Smith guilty of capital murder. The state did not seek the death penalty, and Smith received a sentence of life imprisonment. (Clerk's R. at 166-67). The judgment was affirmed by the Texas Court of Appeals, and the Texas Court of Criminal Appeals refused the petition for discretionary review. *Smith v. State*, No. 11-02-262-CR, 2004 WL 1468779 (Tex. App.-Eastland June 30, 2004, pet ref'd). The Supreme Court denied Smith's petition for writ of certiorari. *Smith v. Texas*, 544 U.S. 1001, 125 S.Ct. 1933, 161 L.Ed.2d 776 (2005).

Smith has filed one state application for writ of habeas corpus, which the Texas Court of Criminal Appeals denied without written order on the findings of the trial court without a hearing. *Ex parte Smith*, WR-66,547-01 (Tex. Crim. App. Mar. 28, 2007). Smith filed his federal petition for writ of habeas corpus on April 4, 2007.

D.  ISSUES

Smith asserts the following as grounds for relief:

1. His tape-recorded telephone conversations with Jeffrey Harold Oslin were inadmissible because Oslin was acting as a state agent at the time;

2. The prosecutor engaged in misconduct by
    a. circumventing Smith's right to counsel, and
    b. failing to correct perjured testimony; and

3. The trial court should have sua sponte ordered a mental competency examination.

E.      RULE 5 STATEMENT

Respondent agrees that the petition is timely filed and Petitioner has exhausted available state remedies.

F.      LEGAL STANDARD FOR GRANTING HABEAS CORPUS RELIEF

The standards codified in 28 U.S.C. § 2254 guide our review of a petition for writ of habeas corpus filed by a state prisoner:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *See also Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Relief is authorized if a state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523, 1518, 146 L.Ed.2d 389 (2000); *Tassin v. Cain*, 517 F.3d 770, 776 (5th Cir. 2008). Relief is also available if the state court identifies the correct legal principle but unreasonably applies that principle to the facts of the prisoner's case or reaches a decision based on an unreasonable factual determination. *See* 28 U.S.C. §2254(d)(1)-(2); *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). Mere disagreement with the state court is not enough: The standard is one of objective reasonableness. *Montoya*, 226 F.3d at 404. In addition, state court determinations of underlying

factual issues are presumed correct, and the petitioner has the burden to rebut the presumption with clear and convincing evidence. 28 U.S.C. §2254(e)(1).

G.   DISCUSSION

    1.   Tape-Recorded Conversations

Smith asserts that the trial court should have suppressed the tape recordings of telephone conversations that Smith had with Jeffrey Harold Oslin while Smith was in custody in the Erath County Jail awaiting trial for capital murder. Smith asserts that his conviction was obtained in violation of the Fifth, Sixth and Fourteenth Amendments because Oslin was acting as an undisclosed state agent when he elicited incriminating statements from Smith during telephone calls orchestrated, planned, facilitated, monitored and recorded by law enforcement.

> The underlying facts were summarized by the state appellate court:
>
> The record reflects that, shortly after the August 2001 murders, Oslin gave appellant a ride from the Fort Worth area to the bus station in Houston. During the trip, appellant told Oslin that he and a "guy named Flea" went to a house to kill some people for the money from an insurance policy, that he shot the man in the chest, that Flea shot the woman who was Flea's aunt, and that the woman was not dead so he finished her off. Flea was a nickname for Bobby Landon DeWeese. Oslin told law enforcement authorities about the conversation. Appellant was located and taken into custody. Later, in December 2001 while he was in custody, appellant called Oslin's mother's house "[m]any, many times." During this time, Oslin was in the Harris County Jail on unrelated charges. Oslin's mother told appellant that Oslin would be home around noon. Law enforcement officers brought Oslin to his mother's house on December 21, 2001, and taped the incoming calls from appellant to Oslin. Texas Ranger Andrew Carter testified that no promises were made to Oslin and that, while he did instruct Oslin not to speak in any sort of code, he did not have a conversation with Oslin about what they wanted to achieve during appellant's phone call to Oslin.
>
> Oslin testified at the suppression hearing that it was his idea to aid the law enforcement. Oslin was in custody on a new drug charge at the time of the phone calls. Oslin stated that he was not promised anything and that he was returned to jail after the calls. Oslin also testified that the only instruction he was given was to "find out what [appellant] was calling for." Oslin said that he had "enough trouble going

4

> on" of his own and that he did not want to be involved in appellant's situation with the murders.
>
> At the suppression hearing, appellant testified that he was confined in the Erath County Jail at the time he called Oslin. Appellant stated that the only reason he called Oslin was because Oslin's mother had told him to. Oslin did not say that he was in custody at the time; he did not say that anything appellant said might be used against appellant; and he did not tell appellant that he had the right to counsel or that he could terminate the conversation at any time. Appellant stated that he initiated each call and that he had previously called "[n]umerous" times wanting to speak with Oslin. Appellant testified that he called on December 21 because he wanted to talk to Oslin "real bad."

*Smith*, 2004 WL 1468779 at *1. The trial court denied Smith's motion to suppress, and the jury was allowed to hear the recorded telephone calls. (Clerk's R. 174-77). In the conversations, Smith denied killing anyone, asked Oslin to act like nothing happened and to tell law enforcement authorities that Oslin did not give him a ride to Houston, and eventually offered to pay Oslin $20,000 and take responsibility for Oslin's pending drug charges. *Id.* at *3. The appellate court affirmed the trial court's denial of the motion to suppress, agreeing that the record did not support Smith's contention that Oslin was acting as an agent of the state when he accepted Smith's telephone calls; thus, Oslin's rights to counsel, *Miranda* warnings, or related state protections were not applicable. *Smith*, 2004 WL 1468779 at *2. Smith renewed his complaint in his state petition for habeas relief, but the state habeas court declined to revisit the issue. The state habeas court found a procedural bar precluded review because Smith's argument that Oslin was acting as a state agent had been addressed and rejected on direct appeal. (State Habeas R. 197-200, 207). In addition, the state habeas court found that Oslin's testimony was primarily material to prove that Smith had confessed to him during their road trip to Houston, and the telephone calls were merely corroborative of the prior oral confession. (State Habeas R. 200).

5

To the extent Smith asserts that Oslin was required to give *Miranda*[1] warnings before talking with him, his complaint lacks merit. In rejecting similar arguments, the Supreme Court has found that conversations between suspects and undercover officers do not implicate the concerns underlying *Miranda*, which forbids coercion, not mere strategic deception by taking advantage of a suspect's misplaced trust in one he supposes to be a fellow prisoner or confidant. *See Illinois v. Perkins*, 496 U.S. 292, 296-99, 110 S.Ct. 2394, 2397-98, 110 L.Ed.2d 243 (1990).

More complicated is Smith's argument that the State circumvented his right to counsel. The Sixth Amendment is implicated whenever government agents deliberately elicit incriminating statements from the accused after indictment and in the absence of counsel. *Massiah v. United States*, 377 U.S. 201, 206, 84 S.Ct. 1199, 1203, 12 L.Ed.2d 246 (1964). The Sixth Amendment applies to indirect and surreptitious interrogation, as well as interviews in the jailhouse. *Id*. at 206, 84 S.Ct. at 1203. Secret interrogation of the defendant, from and after indictment, without the protection afforded by the presence of counsel contravenes basic dictates of fairness in the conduct of criminal cases and the fundamental rights of persons charged with a crime. *Id*. at 205, 84 S.Ct. at 1201. The Sixth Amendment is not violated whenever by luck or happenstance the State obtains incriminating statements from the accused after the right to counsel has attached; however, knowing exploitation by the State of an opportunity to confront the accused without counsel being present is as much a breach of the State's obligation not to circumvent the right to the assistance of counsel as is the intentional creation of such an opportunity. *Maine v. Moulton*, 474 U.S. 159, 176, 106 S.Ct. 477, 487, 88 L.Ed.2d 481 (1985). *See also United States v. Henry*, 447 U.S. 264, 270, 100 S.Ct. 2183, 2186-87, 65 L.Ed.2d 115 (1980).

---

[1] *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct.1602, 16 L.Ed.2d 694 (1966).

The federal court, however, need not assess the reasonableness of the state court disposition of Smith's complaints because any constitutional error was harmless. *See Milton v. Wainwright*, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972)(declining to reach merits of claim because use of evidence allegedly obtained in violation of Fifth and Sixth Amendments was subject to harmless error analysis and was harmless). On collateral review, a trial-type constitutional error like the one at issue here warrants habeas relief only if it had a substantial and injurious effect or influence in determining the jury's verdict. *Fry v. Pliler,* __ U.S. __, 127 S.Ct. 2321, 2328, 168 L.Ed.2d 16 (2007); *Brecht v. Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). Smith cannot meet the standard for harm contemplated by *Brecht* given the evidence against him and the trial record as a whole.

Oslin testified that soon after the murders Smith called Oslin to tell him that something "really bad" had happened. (10 Rep. R. 229). A few days later, as Oslin drove Smith to his attorney's office and a friend's home, Smith admitted his involvement in the murder of two people. (10 Rep. R. 232). Smith talked about the murders again as he and Oslin traveled to Houston just days after the Thomases were killed and prior to the initiation of criminal proceedings against Smith. (10 Rep. R. 234). Smith made no similarly unequivocal confession during the telephone calls, although he was distraught about the charges against him and in later conversations attempted to bribe Oslin not to testify. (State Habeas R. 79). A friend also testified at trial that she saw Smith soon after the murders in a truck that matched the description of a vehicle that had belonged to one of the victims, and a man who had been incarcerated with Smith in Louisiana testified that Smith admitted shooting a man and woman in Texas. *See Smith*, 2004 WL 1468779 at *4. Smith's

accomplices in the murders also testified at Smith's trial about his participation, and the details they gave of the offense were corroborated by a medical expert. *See id.* at *3.

Regardless of whether the state courts acted unreasonably in rejecting Smith's complaints of constitutional violations, the admission of his tape-recorded conversations did not have a substantial and injurious effect on the verdict. Smith has not shown that the trial court's failure to suppress the tape recordings warrants federal habeas relief.

    2.    Prosecutor Misconduct

Smith complains that the prosecutor, in using the tapes from his recorded conversations with Oslin, is responsible for impeding or circumventing his right to counsel. The prosecutor and police have an affirmative obligation not to act in a manner that circumvents and thereby dilutes the protection afforded by the right to counsel. *Maine v. Moulton,* 474 U.S. 159, 171, 106 S.Ct. 477, 484, 88 L.Ed.2d 481 (1985). But Smith's complaint that his Sixth Amendment right was circumvented or diluted has been addressed and rejected as grounds for habeas relief. Rephrasing his argument as one of prosecutorial misconduct does not change this result.

Smith also complains that the prosecutor allowed perjured testimony to stand uncorrected. The Due Process Clause of the Fourteenth Amendment forbids the State knowingly to use, or fail to correct, perjured testimony, including false testimony that goes to the credibility of the witness. *See Giglio v. United States*, 405 U.S. 150, 153, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972); *Napue v. Illinois*, 360 U.S. 264, 271, 79 S.Ct. 1173, 1178-79, 3 L.Ed.2d 1217 (1959). The crux of the violation is the deception of the court and the jurors. *Tassin v. Cain*, 517 F.3d 770, 778 (5th Cir. 2008). The existence of firm promises or guarantees of favorable treatment are not necessary to invoke the prosecutor's duty to disclose that a witness has an expectation of gaining a benefit from

8

testifying. *Id.* at 777-79. The issue of the prosecutor's misconduct presents a mixed question of law and fact. *See Creel*, 162 F.3d at 391 (5th Cir.1998).

Smith asserts that the prosecutor elicited perjured testimony during the suppression hearing and at trial with respect to the existence of an agreement between Oslin and the State that his assistance would be considered in disposing of drug-related charges pending against Oslin in Harris County, Texas. Smith asserts that the Erath County District Attorney, the Texas Rangers who investigated the murders and orchestrated the taping of the telephone calls, and Oslin were all aware of the agreement, but concealed it during the suppression hearing and at trial.

The state habeas court found that Smith failed to set out any facts that were unknown to defense counsel at trial, with the exception of two exhibits attached to Smith's state habeas petition that appear to be written demands from Smith to the Texas Rangers and district attorney for information related to Oslin's role in the murder investigation. (State Habeas R. at 36-41, 198). The state habeas court found that these two new exhibits did not constitute any type of evidence or admission of an agency or employment relationship between Oslin and the State. (State Habeas R. 198). The state habeas court further found no evidence that any law enforcement officer perjured himself during the suppression hearing or trial. (State Habeas R. 199).

To controvert the state court findings, Smith points to a report prepared by Texas Ranger Andrew Carter that includes a November 26, 2001 entry that Oslin had offered to assist investigators in Smith's case and that the district attorney in Harris County had agreed to consider the degree of Oslin's assistance in the murder investigation in addressing Oslin's pending charge in Harris County. (State Habeas R. 29). The investigating officers testified at the suppression hearing that

9

they did not know of and did not offer any incentives to Oslin for his cooperation with the telephone calls. (2 Rep. R. 21, 31-32).

The state habeas court found no evidence of perjury because Carter's report was referring to non-specific consideration that was given in exchange for Oslin's written statement on December 6, 2001 that detailed Smith's confession during the drive from Fort Worth to Houston in August 2001, while the questions at the suppression hearing concerned whether Oslin was offered additional consideration in exchange for volunteering to assist the officers on December 21, 2001. (State Habeas R. 198-99). Moreover, the state habeas court found that defense counsel was informed of Oslin's cooperation with authorities and that this information was available for defense counsel's use at trial. (State Habeas R. 199-200). At trial, the jury learned of Oslin's criminal record and knew that Oslin had recently received deferred adjudication in his own criminal case that was conditioned on his cooperation and testimony in Smith's case. (10 Rep. R. 223-25, 247-53).

Smith has failed to rebut the underlying state court findings by clear and convincing evidence. The federal court must defer to those findings, and in doing so, cannot find that witnesses for the State testified falsely or that material information about Oslin's relationship with the prosecution was concealed in violation of *Giglio*. The state court's rejection of Smith's complaints of prosecutorial misconduct has not been shown to be contrary to or an unreasonable application of clearly established federal law.[2]

---

[2] The constitutional violation also has a materiality element. False evidence is material if there is any reasonable likelihood that it could have affected the jury's verdict. *Giglio*, 405 U.S. at 153-54, 92 S.Ct. at 766; *Reed v. Quarterman*, 504 F.3d 465, 473 (5th Cir. 2007). Because Smith has not established that there was perjured testimony or information concealed from the jury, the issue of materiality need not be addressed.

3. Mental Competency

Smith complains of the trial court's failure to sua sponte order a competency examination because the trial court was put on notice at the suppression hearing the week before trial that Smith's competency to stand trial was at issue. Respondent urges that a procedural bar precludes federal court review of Smith's complaint.

Smith did not raise his argument on direct appeal. When he presented the issue in his state petition for collateral relief, the state habeas court found the issue was procedurally barred because it could have been brought on direct appeal. (State Habeas R. 183). The state habeas court further found no merit to the complaint. (State Habeas R. 183-84). The state habeas court's decision is the last clear action of the state courts because the Texas Court of Criminal Appeals adopted the state habeas trial court's findings and conclusions, including the conclusion that Smith had procedurally defaulted his claim by failing to present it on direct appeal, and denied the application for writ of habeas corpus without written order. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-06, 111 S.Ct. 2590, 2593-95, 115 L.Ed.2d 706 (1991).

The law in Texas requires a convicted criminal defendant to present any and all claims then available as points of error on direct appeal. *Ex parte Gardner*, 959 S.W.2d 189 (Tex. Crim. App. 1998)(op. on reh'g). The Fifth Circuit has recognized the *Gardner* rule as an adequate and independent state ground barring federal review, and the rule was in effect well before Smith's direct appeal in 2002. *See Busby v. Dretke*, 359 F.3d 708, 719 (5th Cir. 2004). Additionally, a state court can expressly and unambiguously bases its denial of relief on a state procedural default even if it alternatively reaches the merits of a defendant's claim. *See Harris v. Reed*, 489 U.S. 255, 264 n.10, 109 S.Ct. 1038 n.10, 103 L.Ed.2d 308 (1989); *Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999).

Smith makes no effort to overcome the procedural bar by claiming cause and prejudice or asserting that a miscarriage of justice would result if the claim is not considered on its merits. *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Nor can he meet these exceptions because his substantive claim is meritless.

The Constitution prohibits trial and conviction of a defendant who is mentally incompetent to stand trial. *See Cooper v. Oklahoma*, 517 U.S. 348, 354, 116 S.Ct. 1373, 1376, 134 L.Ed.2d 498 (1996); *Pate v. Robinson*, 383 U.S. 375, 378, 86 S.Ct. 836, 839, 15 L.Ed.2d 815 (1966). The trial court is required to cease proceedings and hold a competency hearing, sua sponte if necessary, when a question arises at trial about the defendant's competency. *See Robinson*, 383 U.S. at 385, 86 S.Ct. at 842. If the trial court had evidence that should have raised a reasonable doubt as to competency, yet failed to make further inquiry, the defendant has been denied a fair trial. *Mata v. Johnson,* 210 F.3d 324, 329 (5th Cir. 2000); *Carter v. Johnson*, 131 F.3d 452, 459 n.10 (5th Cir.1997). The question is whether the trial court received information which, objectively considered, should reasonably have raised a doubt about defendant's competency and alerted him to the possibility that the defendant could neither understand the proceedings or appreciate their significance, nor rationally aid his attorney in his defense. *Lokos v. Capps*, 625 F.2d 1258, 1261 (5th Cir.1980). Relevant factors include (1) any history of irrational behavior, (2) the defendant's demeanor at trial, and (3) any prior medical opinion on competency. *Mata*, 210 F.3d at 329.

Smith fails to make a showing of any bona fide doubt about his competency at the time of his trial. Although Smith commented at the suppression hearing that he was under the care of a physician and was taking medication that caused him to see colors or other visual hallucinations, he testified that he was able to hear the prosecutor's questions and was able to talk with defense counsel

about the proceedings. (2 Rep. R. 137-38). He also ascribed his problems during the suppression hearing to nervousness and said that he understood what the prosecutor was doing. (2 Rep. R. 138-39). There is no evidence from Smith's counsel that he had trouble working with or communicating with Smith at trial, nor does Smith point to historical information, prior opinions about his competency, or other events that should have alerted the trial court that his competency to stand trial was an issue. During voir dire one of the venire members advised the trial court that she worked for the county's mental health services agency and was aware that a counselor from the agency had twice visited Smith in jail, but she had no specific information about the visits. (5 Rep. R. 60-66). The evidence did not raise a bona fide doubt about Smith's mental competency so as to require a sua sponte court-ordered competency examination.

Having failed to demonstrate any merit to his substantive complaint, Smith cannot overcome the procedural bar that precludes federal court review. Alternatively, the state habeas court's further rejection of Smith's complaint as meritless is neither unreasonable nor contrary to Supreme Court precedent.

H.  EVIDENTIARY HEARING

Smith requests an evidentiary hearing. If a petitioner fails to develop a factual basis for a claim in state court, a federal habeas court shall not conduct an evidentiary hearing on the claim unless the claim relies on a new (and retroactive) rule of constitutional law or on a factual predicate that could not have been previously discovered through the exercise of due diligence and the facts would be sufficient to establish by clear and convincing evidence the petitioner's entitlement to relief. *See* 28 U.S.C. § 2254(e)(2). Smith has not pointed to any new rule of constitutional law in support of his claim and has not identified any specific factual dispute that could not have been

developed sooner and whose favorable outcome in the event of a hearing would entitle him to relief. He does not satisfy the statutory prerequisites for an evidentiary hearing.

## RECOMMENDATION

The petition for writ of habeas corpus should be denied. Smith's request for an evidentiary hearing should also be denied.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until June 2, 2008. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until June 2, 2008, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED MAY 9, 2008.

/s/   Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE